United States v. Vasquez 22-1294. Good morning. I'm Dean Sandiford from the Federal Defender's Office, and I'm here for Orlando Vasquez. When the detective removed Mr. Vasquez from his vehicle, he was standing in the yard, just steps from the house and outside the front window. Under Hardina's and Collins, the Supreme Court's most recent curtilage cases, this was a clear intrusion into the curtilage of Mr. Vasquez's home. Don't we have to look at the entire factual situation, how it evolved? If he had stopped when he was asked, there wouldn't be an issue. So they follow him all the way, and he didn't think they were going to give him a good Samaritan medal. And he gets into the driveway and puts the window down and they walk up and they say, okay, here's the deal. And one thing leads to another. How is that curtilage? And why isn't it just part and parcel of the initial attempt to stop? Well, what we know from California v. Lange is that the police police do not have an automatic right to follow a fleeing suspect even into their own curtilage of their home. They have to either have a warrant or they have to have an exception to the warrant. The curtilage, though, too, you do have a driveway that covers both houses on either side. There's no indication that he was having picnic tables out in the area and was treating that like part of his living space. Let me address both of those points. First, Detective Dietrich intruded into the yard, not into the driveway. That was a physical intrusion. And if it was into the curtilage, then that violates the Fourth Amendment, regardless of whether the driveway area was also curtilage. And this notion that there needs to be picnic tables or something in the in the yard conflicts with Hardina's and Collins. In Collins, it was a driveway area. The Supreme Court called it a parking patio and there was no indication the defendant used it for anything other than parking his car. It was all the way back, almost behind the house, wasn't it? It was beside the house. It was behind and beside the house. I don't think it was behind the house because the officer could see into it from the street. So this motorcycle that the officer was looking for, he could see it from the street. And the Supreme Court said the visibility of the area doesn't make it not curtilage. And in fact, the fact that it's visible doesn't deprive it of constitutional protection. So what Hardina's and Collins stand for is that the area immediately surrounding and associated with the home is curtilage. Collins, in particular, says that the area outside the front window is curtilage. And the reason it's protected, we know this from Hardina's, is because it's to protect the house. It's to protect the house from the officers being able to peer inside of it. That's precisely where this detective was standing. So to get back to your point about them following him on. When was he standing? Well, the easiest way to see that is from the photograph that's in the brief because you can see right where Mr. Vasquez's car was parked. And we know the officer was just outside the driver's window. So he's very close to the house. I can't tell you exactly how many feet from the photograph, but there's a little walkway that leads to the porch. It looks like it's just a few feet between that walkway and the bay window that protrudes from the house. And he's standing just on the other side of that walkway. So he's clearly just feet. I don't know exactly how many feet, but he's very close to the front window. Could you help us take into account the fact that it was a shared driveway? Do you think that doesn't matter? Well, I don't think it matters because we're not principally challenging or raising whether the driveway is curtilage. The detective intruded into the yard and a physical intrusion into curtilage is a constitutional violation. So whether or not the driveway was curtilage is really beside the point. The detective wasn't in the driveway. Mr. Vasquez was in the driveway, but the detective was in the yard right outside the front window. So I don't think you even need to get into whether or not the driveway was curtilage because the entry into the yard independently establishes a constitutional violation if that area was curtilage. So forget the driveway altogether. I think you can forget the driveway altogether. That's right, because that's not where the detective went. And when he seized Mr. Vasquez, removed him from his car, he forced him to the ground in the yard. So we have both a physical... True, but it was still a seizure and for Fourth Amendment purposes. But so what we have here is we have a physical intrusion, which by itself is enough, and a seizure, which also by itself is enough. So yes, I think you can completely ignore the driveway. I guess I'm wondering what in your view should the officers have done in this situation to avoid, however you define the curtilage. Well, I think that they either needed to get a warrant or they needed to have... Why would they get a warrant? Well, maybe they wouldn't because these were such minor traffic violations that maybe they let them go. But this isn't terribly different from... Well, maybe they should have just let it go. Is that what you're suggesting? I think they either needed to get a warrant or let it go. I think that that's right. And, you know, California v. Lange makes this clear. I mean, in that case, the defendant was fleeing from the police and in a much more kind of... Much more kind of elusive way than Mr. Vasquez was. Went into his house and the Supreme Court said you can't automatically go into his house. The curtilage gets the same protection as the house. They said you need an exception to the warrant requirement. The only one the government has raised on appeal is consent. And the district court didn't pass on it. So the government's essentially asking this court, an appellate court, to find facts. And in any event, his conduct was far too ambiguous to constitute consent under the standard that applies to that. It's a very demanding standard. The consent can be implied, but it has to be unequivocal and freely given. And here all we have is Mr. Vasquez driving into his driveway. It's just as likely that he was trying to... But he wouldn't... He had to consent. I mean, consent, meaning... I mean, you're saying here it is implied, correct? No, it could be implied is what I was saying. It could be implied. Yes. Yes. Okay. Well, why is... When you know the police officers are following you and you drive to your driveway, why isn't that consent for them to come talk to you? Don't you know that they're... But it's not necessarily that you're consenting to them doing that. I think it's just as likely that he was trying to evade them and he was trying to get to his house and escape from them. And, you know, we may not like that, but the Supreme Court has told us in that situation that officers can't follow a fleeing suspect into their house or their cartilage as a matter of right. They either need to get a warrant or they need to have a warrant exception that applies. So, you know, in that situation, the exigent circumstances is what's usually going to justify an entry like this, because in many cases when someone is fleeing from the police, there is a genuine emergency that the police need to attend to. The government hasn't argued exigent circumstances in this case. It argued it below and has abandoned it on appeal. And that's for good reason, because these were, as I mentioned, minor traffic violations. He had a temporary tag that was expired and he didn't come to a complete stop at a stop light when he was turning right. These are not serious violations at all. I don't even know if they're misdemeanors. They're traffic infractions. So there was certainly no emergency that justified the officers intruding into this constitutionally protected area. You know, the government's brief really focuses on this idea that the area wasn't enclosed and it was visible from the street. We know after Collins and Jardinez that those sort of privacy factors don't apply in this sort of situation, because in Jardinez, the porch was the area where anyone would go. Anyone who wanted to knock on the door, deliver mail, deliver packages. The Supreme Court held it was curtilage without regard to whether it was enclosed or visible to view from the street. The same was true in Collins. The officer could see right into this area from the street. There was a driveway led right into it and it was completely open on that side. And the Supreme Court still held that it was curtilage. So what those cases really stand for is, at least in this kind of neighborhood context, you don't have to wall off your property from the public, either from view or access, to make it curtilage. And so, you know, those factors just don't come into play in this context under these cases. Unless the court has further questions, I'll reserve the rest of my time. You may. Thank you. Vertically challenged. May it please the court. Had to get close to it. Maybe a little higher. Thank you, Judge Kelly. May it please the court. Jess McKeel for the United States. Your Honors, counsel talked about privacy no longer being much of a consideration after Jardinez and Collins. But Jardinez and Collins described curtilage as the area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened. And it's said that it's an area that is generally clearly marked. Now, that is important, not just for reviewing courts, but for law enforcement to know exactly what area is cordoned off, what area is constitutionally protected. Now, here, as clear from the photos in the record, page 45 of the record, it's also in the briefs, but I would strongly encourage this court to look at the video. I think the video is the most compelling. That's volume four. You could skip to about minute 110. That's when Officer Dietrich gets out of his vehicle and starts approaching Defendant Vasquez's vehicle. You're going to see several things. First, this area is not clearly marked, as the court has described. Secondly, it is not. Well, how would this area be clearly marked? Well, it could be clearly marked from several different possibilities. First, there could be some enclosure. Now, Dunn referred to fencing configurations as important in a footnote. It specifically referenced fencing configurations. We could have some sort of fence. We could have hedgerow, shrubbery, trees. There's natural barriers in some of our case law. There's got to be something to designate and cordon off this area as private. What we're viewing curtilage is, is as an extension of the home. It is given the same protection as the interior. So if we're going to pull the interior out into the yard, there's got to be some indication, some objective indication that this is private. And how do we look to that? We have several factors. Dunn talks about them. We've got enclosure, visibility, nature of uses, proximity. First, as to proximity, one thing I want to really stress again, if you look at the video, it's not quite as close as I think it's portrayed in the defendant's brief. It refers to as mere feet. What we've got is about a full car length away from the house. Most importantly, I want to stress to this court, is that the area that the officer was standing was physically separated from the house itself by this paver walking path. But what I'm sorry, there's a paver walking path that cuts across the front yard, attaching the driveway to the porch. This occurred on the street side of that path. Had this occurred on the house side, we're talking about much closer to the house, the classic arms length away. This is on the street side of that path. So it is physically separated, not immediately adjacent, as the case law refers to. It's physically separated from the house. It's in an area that is wide open to the public, not enclosed at all. And there's just no indicia of this being private. It doesn't contain any of the hallmarks. Well, counsel, what do you do with the argument that this is an urban area, this is a small house, it's basically right next to the driveway? I mean, in an urban area, we have to think a little bit differently about the done factors. First off, I agree that the done factors do still apply. And I think Your Honor's decision in Powell still applies done factors in a non-rural setting that was a commercial setting. So we do still look at the done factors. Proximity is there, but not quite as much as the defendant portrays. But we have absolutely no enclosure. Now, Your Honor, there could be some sort of fencing. There could be a way to cordon this area off and to show that this is curtilage. This is my private space. Even a no trespassing sign, you know, which wouldn't in and of itself be dispositive. We don't have that. We have literally nothing, nothing for the enclosure factor, nothing for the visibility factor. What about the argument that we really don't even need to look at the driveway because the officer was on the lawn? Well, Your Honor, initially with the motion to suppress it, it was teed up as the driveway being the curtilage. And so that's why the district court's focus is largely on the driveway. And it correctly noted that it's a shared driveway. I think the case law overwhelmingly indicates that's not curtilage. It has shifted a little bit now with Detective Dietrich standing in the front yard. Now, I want to be very clear. And again, as we look at the video, he's not just traipsing through the front yard, walking up to the porch. He's on a sliver of grass right next to the paved driveway because the defendant pulled in as close as you can. That's the only place that he could stand to effectuate this traffic stop. And again, the defendant drove with the blue lights behind him down the street, turned left, went past six houses, slowly pulled into his house. Officers get out. There's no indication that this area is constitutionally protected, that this is curtilage. Well, your opponent suggests that that's his right. He can go home and go into his house or he can do that. There is a case law talking about retreating into one's home. But I think that's also where this starts to push towards the consent argument. Now, again, I think this is not curtilage. I think the case law, the facts show that this absolutely is not curtilage. The officer was entitled to walk up to the driver's side window and effectuate the stop. But again, at this point, we've got consent as well. He's slowly driven down the street, led them to his driveway as the defendant acknowledged, rolled down his window to talk to the officers. What else is there besides some indication of I'm ready to talk to you? I'm ready to turn to my left. Well, the only place the officer could stand is where he was standing in the front yard. There was nowhere else that he could go. All the factors in this case point to this not being curtilage. The alternative ground to affirm would be consent. So can you talk a little bit about how do we put in the mix the fact it was a shared driveway? Well, again, I think going to the same factors, you know, is this a sense of privacy? Is this are we pulling the interior of the home out into the into the space in the shared driveway? In fact, if you look at the video and the photos, it's almost more of an alleyway. It connects the street to the back alley. There is no it's a free flow space. So there's you can park your car there. But it actually is more of an alleyway to an alleyway. And it is shared space. That is an undisputed fact that has not been challenged. And the case law overwhelmingly, certainly from other circuits that are cited in these briefs. But that's not that's not cartilage. It's not enclosed. It is entirely visible. Nature of uses show that it's not private because it can be mixed with the the neighbor's use of that space. So but it sounds like the driveway is perhaps off the table. What I heard, at least in the initial argument, was let's forget about the driveway. Let's just focus on the front yard. And I think in many ways, the front yard is very clear. It is on the street side of this paving walking path. Be a different story if we were on the porch, like Jardines. Different story if we were in that, you know, little bed right in front of the window. We are suggesting, I guess, because there's a path, the part closer to the house would be cartilage or at least closer to cartilage. But the part closer to the street is not. Is that what the path, the role of the path? I believe that that paving, that paved, sorry, paver walking path does demarcate perhaps cartilage. I think if I think this way, could you say there's a little path does constitute the line between cartilage and non-cartilage? I think that that makes a much stronger case for cartilage if this occurred on the house side. But it's not. And it is actually several steps from that walking path. I think we've got a clearly cordoned off area. And this is a wide open space. Not physically, not symbolically, not psychologically, intimately linked to the home. It's definitely not clearly marked. Unless the panel has anything. Actually, I'm wondering if you could respond to opposing counsel's argument that you should have just gotten a warrant in this situation. Well, Your Honor, in this case, there would be no, simply no need to get a warrant. You know, we're effectuating a traffic stop. This is not a constitutionally protected area. It's not cartilage. There would be no reason to go get a warrant. And I do, but I do want to clarify. I think that there's more than just a couple of traffic citations. Yeah, we've got the expired tag, the failure to stop at a red light. There's a failure to stop for law enforcement at this point. And there is a Colorado statute on point that was cited below. But, you know, we're driving down the street, we turn left, we continue past several houses. They're not stopping for the blue lights. So that actually brings us into probably more of the misdemeanor realm. But I think counsel's right about the land case and exigent circumstances, which is part of the reason we didn't brief it here. But I just don't see there being a need for a warrant. This is effectuating a traffic stop in a non-constitutionally protected space. So no further questions, I'd ask this court to affirm. Thank you very much. I just have a few quick points. The first one is this notion. Oh, I'm sorry. The first point is this notion that our argument has shifted on appeal. The government had never made that in their briefs. It's the first time they've said that here. And the argument didn't shift. In the motion, see, I've got it right here. We argued that the driveway and the adjacent front yard were curtilage. So this is not a shift. This is the same argument that we made below. The district court wrongly focused on the driveway, but we made the argument about the yard. Did you just say that the whole driveway is curtilage? No, I was just pointing out that defense counsel below made the argument that the yard was curtilage, not just the driveway, because the government suggested in their argument that we had shifted our argument on appeal. That was the only point I was trying to make about that. Or you're not suggesting the whole, you know, the grassy area is all curtilage if it's mowed regularly. I mean, you certainly don't need to find that. I mean, all you have to find is whether the area where the officer was standing, where he physically intruded, was curtilage. So if he's standing on the street side of the little path. Yeah, that's another thing I wanted to address was that path. So that path just links the driveway to the porch. It's just a walking path to get to the porch and it goes to the bottom of the steps. There's nothing to suggest that the homeowners intended that to serve as some sort of demarcation between their curtilage. It's just the path that they used. The whole grass area could be curtilage. I think the whole grass area could be curtilage, but you don't need to decide that here because of how close the officer was to the house. And I think I heard opposing counsel say that from the body cam video, you can see that he was a car length away. That's very close. What the Supreme Court has said is that we protect the area outside the front window so that officers can't peer inside. A car length is certainly close enough to look inside someone's house. I think it's clearly close enough to the house that the Supreme Court would consider it to be curtilage. I also wanted to speak briefly about this point about it not being cordoned off. That is a factor from Dunn. Dunn was a very different case about a barn that was 60 yards from a house. In Hardinas and Collins, those areas weren't cordoned off either, and the Supreme Court found them to be curtilage. Again, that driveway area, the parking patio, you could see right into it from the street. And the porch in Hardinas, there was no indication that it was enclosed, that you couldn't see, the public couldn't see it from the street. And the Supreme Court found it to be curtilage simply because it was in the area immediately surrounding and associated with the home. So I think however you look at it, you know, we don't know exactly how many feet the officer was away, but he was right outside the front window and he could clearly see in. And that's an area that the Supreme Court has said is curtilage. Unless there are further questions, I'd cede the remainder of my time. Thank you. Thank you. Thank you for your argument. Counsel is excused.